The Chicago, Peoria and St. Louis Railway Company

*v.*

Edward J. Vaughn *et al.*

*Opinion filed December 16, 1903.*

1. Limitations—*possession of grantee of life tenant is not adverse to heirs.* Possession by the grantee of a life tenant, even though the deed purports to convey absolute title, is not adverse to the remainder-men during the continuance of the life estate.

2. Notice—*record of deed is constructive notice.* The record of a deed by which the grantor conveys the fee subject to his life estate is constructive notice to a railroad company subsequently making a contract with the grantor for right of way.

3. Partition—*when railroad company should be given a reasonable time to acquire right of way.* Where a railroad company enters upon its right of way under a contract and subsequent deed from the life tenant, a partition decree finding the title in fee to be in the

remainder-men as tenants in common should give the company a reasonable time in which to remove its improvements and surrender possession of the land or acquire the right of way by agreement or condemnation.

4. Eminent domain—*remainder-men not required to take initiative in matter of condemnation.* Where the remainder-men give notice to a railroad company, after the life tenant's death, of their claim to the right of way occupied under a deed from the life tenant, they are not bound to take the initiative in the matter of instituting condemnation proceedings.

5. Same—*when petitioner will not be required to pay for improvements.* A railroad company which entered upon its right of way under a deed from a life tenant will not, in a condemnation suit after the life tenant's death, be required to pay the remainder-men for the improvements placed by the company upon the right of way at its own expense.

Appeal from the Circuit Court of Jersey county; the Hon. O. P. Thompson, Judge, presiding.

This is a bill in chancery, filed on September 11, 1902, in the circuit court of Jersey county by the appellee, Edward J. Vaughn, for the partition of one hundred and sixty acres of land, to-wit, the south-west quarter of section 10, township 8 north, range 10, west of the third principal meridian, in said county. The defendants to the bill were Sarah J. Vaughn, wife of the complainant, Edward J. Vaughn, George D. Locke, holding a mortgage upon the premises executed to him by Edward J. Vaughn and his wife, and the appellant, the Chicago, Peoria and St. Louis Railway Company of Illinois. The bill alleged that the complainant, Edward J. Vaughn, and one of the defendants below, Sarah J. Vaughn, were the owners in fee, as tenants in common, of the one hundred and sixty acres, and that each owned an undivided half thereof, the share of each being subject to an inchoate right of dower of the other; that said railway company was in possession of a part of the premises, using and occupying the same as a railroad right of way, and claimed some interest in the strip of land occupied by it, but had no interest in or title to the same, or right to the posses-

sion thereof; that complainant is desirous of a partition between himself and Sarah J. Vaughn according to their respective interests, or, in case the premises could not be divided, then the same should be sold, and the proceeds divided. The bill prays that the railway company be declared to have no interest in the premises, or any part thereof, and no right to the possession and use of the same, and that it be required to surrender up and deliver to the complainant, and said Sarah, the possession of the strip, or portion of the premises, used and occupied by it; that partition be made, and, in case it cannot be made, that the premises be sold and the proceeds divided.

The railway company above named filed a demurrer to the bill, which was overruled. The railway company then filed a separate answer, denying the ownership by Edward J. Vaughn, and his wife, as alleged in the bill, admitting its possession of the portion of the premises used by it as a right of way, fifty feet wide on each side of the center line of its railroad, and averring that it was the sole and lawful owner of the said strip of ground, occupied by it as a right of way. The answer avers that Sarah J. Vaughn had no interest in the premises, except an inchoate right of dower, and that the deed of conveyance to her by her husband was made for the purpose of giving a court of chancery jurisdiction; that the railway company was a corporation, organized under the laws of Illinois for the purpose of carrying on the business of a public common carrier, and was then engaged in such business; that on January 11, 1881, one Josiah Vaughn, the father of Edward J. Vaughn, executed a contract with the St. Louis, Jerseyville and Springfield Railroad Company, by which he agreed to give said last named company a good deed free from all encumbrances for a strip of land fifty feet wide on each side of the center line of the railroad, as the same might be located and constructed over the north half of said south-west quarter; that Josiah Vaughn put the St. Louis, Jerseyville

and Springfield Railroad Company in possession of said strip, and said company located and constructed its line of railroad over said premises in the year 1881; that the appellant, and its' legal predecessors, expended large sums of money in the construction and operation of said line of railroad over said premises; that said strip was part of a main line running from Springfield to a point near Grafton, or Jersey Landing, in Jersey county; that, in 1881, Edward J. Vaughn had knowledge of the construction of the railroad across said tract, and did not protest against such use until September 13, 1900, when he demanded possession of the same, and on the next day commenced an action of forcible detainer against the railway company, in which action judgment was rendered in the circuit court in favor of Vaughn and against the railroad company, but, upon appeal to the Appellate Court, the judgment of the circuit court was reversed, etc.; that appellant, the Chicago, Peoria and St. Louis Railway Company of Illinois, is the sole and real owner of said strip of land conveyed by Josiah Vaughn to its legal predecessor, the St. Louis, Jerseyville and Springfield Railroad Company, and by *mesne* conveyances to appellant; that, under said contract of 1881, Josiah Vaughn executed to the St. Louis, Jerseyville and Springfield Railroad Company a quit-claim deed conveying said strip of land, and that the legal predecessors of appellant entered into possession of the strip, thereunder, and they and appellant have held the sole and exclusive possession thereof in good faith from that time until this suit in partition was begun, and that appellant and its legal predecessors, during all the time of their possession of the said strip, have paid all the taxes assessed thereon.

All the defendants below, except the appellant company, were defaulted, and the cause was referred to a master in chancery to take proofs; but a stipulation was made between the parties before the master by which all the material facts were agreed to.

The court rendered a decree upon the bill, answer of the railway company, replication thereto, and report of the master, which was approved; and therein found that Edward J. and Sarah J. Vaughn were each entitled to one-half of the one hundred and sixty acres, as tenants in common in fee simple, and ordered that partition be made. The decree also found that the fee simple title to that part of the premises occupied by the appellant as a railway company, being one hundred feet wide, was vested in Edward J. and Sarah J. Vaughn, and the railway company was thereby adjudged to be ousted of the possession of said strip of ground, and directed to surrender possession thereof to Edward J. Vaughn and his wife within a period of sixty days from the date of the decree, and, in default, that a writ of possession be issued against the company. The decree then proceeds to appoint commissioners to make partition.

THOMAS F. FERNS, and WILSON & WARREN, for appellant.

H. W. POGUE, for appellee Edward J. Vaughn.

BROWN, WHEELER, BROWN & HAY, for appellee Sarah J. Vaughn.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

On November 11, 1879, Josiah Vaughn, being then the owner in fee simple, and in the exclusive possession, of the quarter section of land here sought to be partitioned, conveyed the same to his two sons, Edward J. Vaughn and Charles A. Vaughn, together with other lands, containing in all three hundred and forty-two acres, and the said deed contained the following reservation: "Reserves to the said Josiah Vaughn the sole control, use and occupation of the above described premises, and all the

rents and profits thereof, during the term of his natural life." This deed was recorded in the recorder's office of Jersey county on the day of its date, to-wit, November 11, 1879. Unquestionably, after the execution and delivery of this deed Josiah Vaughn had only a life estate in the property thereby conveyed, and his two sons, Charles A. Vaughn, and the appellee, Edward J. Vaughn, owned the remainder subject to the life estate.

Subsequently, on February 19, 1885, Josiah Vaughn executed and delivered to the St. Louis, Jerseyville and Springfield Railroad Company (the original predecessor of the appellant railway company) a quit-claim deed to the strip of land, fifty feet wide on each side of the center line of the said railroad, as the same was located and built across the one hundred and sixty acres, here sought to be partitioned. The deed recited that it "is executed, acknowledged and delivered by the grantor, and accepted by the grantee therein, as a full performance of the covenants and agreements of the grantor," contained in the bond or contract for a deed previously executed.

By the quit-claim deed, executed to it on February 19, 1885, the St. Louis, Jerseyville and Springfield Railroad Company took no other or greater interest in the strip of land, conveyed to it, than an interest for the life of Josiah Vaughn, and the appellant company, as the successor of the St. Louis, Jerseyville and Springfield Railroad Company, took the same interest held by its predecessor. The defense, made by the appellant in this partition proceeding, is that, under the deed of February 19, 1885, as claim and color of title made in good faith, it went into possession of the strip of land, and has been in possession thereof for more than seven years, and, during that time, has paid all the taxes legally assessed against the strip or right of way. There is no dispute as to the facts of its possession, and payment of taxes, during seven years under the quit-claim deed, as color of title. But, under the circumstances already stated, the appellant

cannot make a successful defense on the ground of possession and payment of taxes under section 6 of the Limitation law.

The possession of land by a tenant for life cannot be adverse to the remainder-man or reversioner; and, if he conveys to a third person by words purporting to pass the absolute property, the possession of the purchaser is not, during the continuance of the life estate, adverse to the remainder-man or reversioner. The Statute of Limitations does not run against the remainder-man or reversioner, until after the life estate falls in, and it is only after the latter event occurs, that the possession will be adverse to the remainder-man or reversioner. The possession of the tenant for life, or his vendee, during the continuance of the life tenancy, is, in contemplation of law, the possession of the remainder-man or reversioner. The latter cannot, during the life of the person for whose life the life estate is, bring an action against the person in possession under such life tenancy to recover possession of the premises. "No *laches* can be imputed to one who has no remedy or right of action; and to hold the bar of the statute could run against the title of a person so circumstanced, would be subversive of justice and would be to deprive such person of his estate without his day in court." (*Turner* v. *Hause*, 199 Ill. 464; *Mettler* v. *Miller*, 129 id. 630; *Rohn* v. *Harris*, 130 id. 525; *Higgins* v. *Crosby*, 40 id. 260). In other words, the Statute of Limitations, upon which the appellant railroad company here relies, could not run against appellee, Edward J. Vaughn, as remainder-man or reversioner, until the life estate of his father, Josiah Vaughn fell in. Josiah Vaughn died July 18, 1900. Prior to that date Charles A. Vaughn and his wife conveyed by warranty deed their undivided interest in the lands to the appellee, Edward J. Vaughn, the deed providing that it was "subject, however, to the rights and interests (if any) during the lifetime of Josiah Vaughn, Sr., of the Chicago, Peoria and

St. Louis Railway Company in and to the right of way, now used and occupied by said railway company, over and across" the north half of the one hundred and sixty acres, sought to be partitioned. The possession of the appellant company could not, and did not, become adverse to the appellee, Edward J. Vaughn, until the end of the life estate, and, hence, has only been adverse since July 18, 1900. In September, 1900, the appellee, Edward J. Vaughn, asserted his claim to the appellant railway company of title in fee to the property occupied as a right of way, and, at the same time, the appellant company asserted its claim of title to the said strip as a right of way.

It is claimed, on the part of the appellant company, that it had no notice—when Josiah Vaughn executed the contract in 1881 to convey the strip of land to appellant's predecessor, or when subsequently Josiah Vaughn executed a deed to the railroad company on February 19, 1885—that Josiah Vaughn was not the owner in fee of the property; in other words, that appellant's predecessor had no notice that the interest of Josiah Vaughn in the land was merely a life interest. Whether the question of notice is material or not, it is not necessary here to decide. But if it is material, the deed, executed by Josiah Vaughn to his two sons on November 11, 1879, was recorded on that day, and was upon the records when the railroad company took its contract and its deed from Josiah Vaughn. Therefore, appellant's predecessor had constructive notice by the record of the nature of Josiah Vaughn's interest in the property.

It appears from the evidence that, on August 8, 1902, the appellee, Edward J. Vaughn, executed and delivered to the appellee, Sarah J. Vaughn, his wife, a quit-claim deed conveying to her an undivided half of the quarter section of land, over which the right of way runs. It is charged by the appellant, that this deed was a fraud, and was made merely for the purpose of giving a court

of chancery jurisdiction in this proceeding. But there is no proof to sustain the charge thus made. On the contrary, the stipulation as to the facts, upon which the cause was tried, shows that the appellant company abandoned its contention upon this subject. In the sixteenth paragraph of the stipulation it is agreed that, on August 8, 1902, Edward J. Vaughn executed to his wife this quitclaim deed for and in consideration of natural love and affection and one dollar, without any statement that the consideration in the deed was not sufficient, and without any statement that the deed was made for any improper purpose or from any improper motive. Therefore the deed cannot be regarded as otherwise than valid. (*Danville Seminary* v. *Mott*, 136 Ill. 289).

It is clear, therefore, from what has been said, that the decree of the court below was correct in holding that appellee, Edward J. Vaughn, and his wife, were the owners in fee of the property sought to be partitioned, including the strip of ground claimed by appellant. When Josiah Vaughn, the life tenant, under whom the appellant company held, died, all the title of the appellant company ended, and the fee simple title was vested in the remainder-man.

But a more serious question is presented in regard to that portion of the decree, which requires the appellant company to surrender the possession of the property to the appellees, Edward J. Vaughn and his wife. A decree may be made in a partition proceeding, requiring a surrender of the possession to be made by a third party, claiming an interest in the premises, to the parties found to be the owners thereof as tenants in common. (*Mott* v. *Danville Seminary*, 129 Ill. 403; *Iberg* v. *Webb*, 96 id. 415; *Henrichsen* v. *Hodgen*, 67 id. 179; *Gage* v. *Lightburn*, 93 id. 248; *Gage* v. *Bissell*, 119 id. 298). In *Iberg* v. *Webb*, *supra*, (by mistake referred to in *Mott* v. *Danville Seminary*, *supra*, as *Gage* v. *Lightburn*,) "the decree of the circuit court re-required the defendants, who held under the tax deed,

which was claimed to be a cloud upon the title, to surrender possession to the complainants, and allowed the defendants nothing for the improvements they had made upon the premises. The decree was held not to be erroneous in these particulars, because the defendants had asked no affirmative relief in respect of the matters so complained of." (*Mott* v. *Danville Seminary, supra*). In the case at bar, the appellant company has claimed to be the absolute owner in fee of the strip of ground in question, and has asked no affirmative relief in regard to its improvements, placed upon said strip of ground.

In *Smith* v. *Chicago, Alton and St. Louis Railroad Co.* 67 Ill. 191, it was held that ejectment will lie against a railway corporation by the owner for land, taken and used by it for the purposes of its road, where the land has not been condemned under proceedings, instituted for that purpose in the mode prescribed by the constitution, and laws enacted in conformity therewith. (See also *Chicago and Alton Railroad Co.* v. *Smith*, 78 Ill. 96; *Edwardsville Railroad Co.* v. *Sawyer*, 92 id. 377; *Chicago, St. Louis and Western Railroad Co.* v. *Gates*, 120 id. 86; *Postal Telegraph Co.* v. *Eaton*, 170 id. 513).

In the case at bar, the appellant company commenced no proceeding after the termination of the life estate for the condemnation of the title, owned by the remainder-men or reversioners. But the railroad company cannot be regarded as a trespasser. It went into possession of the strip of land, occupied by it, under a deed from the life tenant, and had a right, during the life of the life tenant, to construct its railroad bed, and lay its tracks upon this strip, and operate its road thereon. There is nothing to show that such use and occupation by it of the strip in question worked any injury to the interests of the remainder-men or reversioners. It was intimated in *Smith* v. *Chicago, Alton and St. Louis Railroad Co. supra*, that, where the entry of the railroad company was legal as to the life estate, and no objection was made to its occu-

pation by the reversioners, the railroad company would be entitled to a notice to quit before action brought. There is no question, under the evidence in this case, that such notice was given, and efforts were made to induce the appellant company to commence condemnation proceedings. The owner of the land is not bound to take the initiative, so far as condemnation proceedings are concerned, because, by the statute, the corporation in such cases must be the actor; "the owner having no duty to perform, he is passive." (*Smith* v. *Chicago, Alton and St. Louis Railroad Co. supra.*)

Although a court of chancery in a partition suit may make an order, requiring a surrender of the possession, and may issue a writ of possession to put such order in force, yet, we think that the portion of the decree, requiring the appellant company to give up the possession, was prematurely entered. The decree directs as follows: "And the said defendant railway company is hereby adjudged to be ousted of the possession of the aforesaid strip of ground, and is hereby ordered and directed to surrender possession thereof to the complainant and defendant herein within a period of sixty days of this date; and that, in default or refusal to so surrender possession thereof, a writ of possession issue by and under the authority of this court, directing the said defendant railway company to surrender possession thereof in accordance with the terms of said writ." The decree then goes on to appoint commissioners, and directs the commissioners to make partition of the property, and provides that, if the property cannot be divided without manifest prejudice, etc., they shall appraise the value, and make a report to the court; and that they shall go upon the premises, and allot the several shares to the respective parties entitled thereto, designating such shares by metes and bounds; and that they may employ a surveyor, etc. The partition proceeding is not ended by the decree entered herein, from which the present ap-

peal is prosecuted. The decree was final, in so far as it determined the titles or interests of the parties in the property, but it was not final in the execution of all the steps, required by the statute for the partition and division of the property. It directs that possession be given to the complainant, Edward J. Vaughn, and his wife, Sarah J. Vaughn; but the commissioners, appointed to partition the property, may divide the one hundred and sixty acres in such a way, as to set apart that portion of the tract, where the railroad right of way is located, to one or the other of these parties alone. If the portion of the one hundred and sixty acres, over which the right of way passes, is set apart to Edward J. Vaughn, then he is the party, in whose favor the writ of possession should be issued. It certainly would not be proper to issue a writ of possession to put Sarah J. Vaughn in possession of the strip of ground in question, if in the partition there was set apart to her a portion of the tract, upon which the railroad right of way was not located.

In *Kern* v. *Zink*, 55 Ill. 449, which was a bill in chancery for partition, brought by a part of several heirs against their co-heirs, to which a party in possession, claiming as lessee of a portion of the premises, was also made a defendant, it was held to be proper, upon the lease being decreed to be void, and the portion of the premises so claimed under the lease being assigned to some of the heirs, who were defendants in the bill, to award to the latter writs of possession against their co-defendant, claiming under the void lease; and in that case it was said: "The land was then partitioned, and two of the parties, to whom the land, held by Allison, was allotted, took out writs of possession. There was no error in this. The validity of the lease was brought before the court by the bill in behalf of all the heirs, and when the court decided it to be void, it was proper to carry that decree into full effect by giving the possession to whichever of the heirs the land might be assigned."

In the case at bar, there was no prayer in the bill that
the deed, made by Josiah Vaughn to appellant's prede-
cessor, should be removed as a cloud upon the title, as
being a deed, which, by its terms, conveyed the whole
title, when, as a matter of fact, the grantor in it owned
only a life estate.   There is, therefore, no provision in
the decree here, setting aside any instrument as a cloud
upon the title, as the lease, held to be void, was set aside
in *Kern* v. *Zink, supra.*   But it is very clearly intimated,
if not held, in the latter case, that the writ of possession,
when issued, should be issued in favor of the co-tenant,
to whom a particular part of the property has been set
off or aparted, in order to put him in possession of his
portion of the land.

For these reasons, we are of the opinion that the
provision of the decree in regard to the surrender of the
possession was made too soon, and that the court should
either have waited until the commissioners had made
their report, before it ordered a surrender of possession,
or should have provided in advance that the possession
should be surrendered to the party, to whom that por-
tion of the tract should be set apart, on which the right
of way of the railroad company was located.   It might
be, that the commissioners would report that the prop-
erty could not be divided, and that the same should be
sold, and then the question would arise, whether the pur-
chaser at the sale would be entitled to be put in posses-
sion of the property.

In addition to what has been said, counsel for the
appellee, Edward J. Vaughn, makes the following state-
ment in his brief: "Appellee, Edward J. Vaughn, did not
in his bill in the circuit court nor in the argument in said
court, nor does he now claim the improvements erected
by appellant on the strip in controversy.   The circuit
court held by its decree that the appellant was ousted
of possession in sixty days after the rendition of the
decree, which was regarded as a reasonable time to the

railway company to remove its improvements, or file its petition to condemn. * * * Appellee, Edward J. Vaughn, now stands ready to adjust the reasonable dam-ages for the strip in controversy by a condemnation suit." It is thus admitted, that there is no desire to take from the railroad company the improvements, which it has placed upon the property, and which, by the terms of the stipulation between the parties, are valued at $5400.00. It is also admitted that a condemnation proceeding to determine the amount of damages to be paid will not be objected to.    If a condemnation proceeding is instituted for the purpose of taking the ground embraced in the right of way and making compensation therefor to the owners, the appellant company will not be required to pay the owners of the land for the improvements so placed upon it at its own expense.    This is so, for the reason that the railroad company did not enter upon the land as a trespasser.    In *Chicago and Alton Railroad Co.* v. *Goodwin*, 111 Ill. 273, which was a condemnation pro-ceeding, and where a railroad company had entered upon land and constructed a railroad over it without injury to the inheritance under a license from the tenant for life, it was held that there was no trespass on the part of the railroad company, and that the law would not require the company, in seeking a condemnation of the land so entered upon for a right of way, to pay the owner for structures placed upon it at its own expense with a view of subsequently acquiring the right of way; and it was also held in that case, that such entry, being originally lawful, would not subject the railroad company so enter-ing to either an action of trespass, or ejectment, on the part of the remainder-men.

Certainly, the railroad company ought not to be re-quired to take up its track located across this quarter section, and remove all its improvements entirely there-from, if such a result can be in any way avoided, so as to protect the interests of appellees, because such action

would necessarily stop the operation of the railroad, and cut its right of way in two.

When the commissioners, appointed to make partition, submit their report, the court below should then enter a decree or an order, requiring the railroad company to surrender the strip of ground, of which it is in possession, within a reasonable time to be fixed by the court, unless within that time it either removes its improvements, or makes compensation to the appellees for their property, either by agreeing with them upon the price to be paid for it, or by instituting a condemnation proceeding for the purpose of determining the price so to be paid. In other words, the railroad company should have a reasonable time within which to condemn the property before it is summarily ejected from the possession thereof. We no not hold that, in this partition proceeding, the court of chancery should summon a jury to determine the amount of compensation to be paid to the owners, or to adopt a proceeding for the condemnation of the property as a part of this proceeding. But the court can easily so frame its order in regard to the possession, as to give the railroad company a reasonable time for making compensation to the owners, either by negotiation, or by a separate proceeding for condemnation, outside of and independent of the present partition proceeding.

Our best judgment is, and we so order, that that portion of the decree of the court below, which decides the ownership of the property here in controversy to be in the appellees, Edward J. Vaughn and his wife, should be, and is hereby affirmed; but that the portion of the decree, relating to the surrender of possession, be reversed, and the court below is hereby ordered to make such order or decree upon that subject, after the coming in of the report of the commissioners, as is consistent with the views herein expressed.

*Partly affirmed and partly reversed and remanded.*